UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NET NAVIGATION, LLC | § § § | |
| | § | Civil Action No. 4:11-cv-660-RAS-ALM |
| v. | § § § | |
| CISCO SYSTEMS, INC. and AT&T INC. | § § § | |
| | § | |
| NET NAVIGATION, LLC | § § § | |
| | § | Civil Action No. 4:11-cv-662-ALM |
| v. | § § § | |
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI TECHNOLOGIES USA INC., and FUTUREWEI TECHNOLOGIES, INC. | § § § | |

## **MEMORANDUM OPINION AND ORDER[1]**

Pending before the Court is Defendants' Motion For Summary Judgment Of Invalidity

---

[1] Upon consent of the parties, Civil Action No. 4:11-cv-662 has been referred to the United States Magistrate Judge for all proceedings in accordance with 28 U.S.C. § 636(c). Thus, for Civil Action No. 4:11-cv-662, this Memorandum shall be treated as a Memorandum Opinion and Order. For Civil Action No. 4:11-cv-660, this Memorandum shall be treated as a Report and Recommendation. Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plaint error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

Based On Indefiniteness.  Defendants seek a finding that claim 1 (and claims 2, 7, 8, 10, 11, 15 and 17 which depend from claim 1) of U.S. Patent No. 6,307,860 are invalid.   The Defendants in both civil actions collectively filed a unified motion in both civil actions.  Citation herein is made to the briefing of the 4:11-cv-660 civil action: Defendants' Motion (Dkt. #123), Net Navigation's Response (Dkt. #137) and Defendants' Reply (Dkt. #142).  The Court conducted a motion hearing in conjunction with the claim construction hearing on November 14, 2012.  After considering the relevant pleadings and oral arguments of counsel, the Court orders / recommends[2] Defendants' motion be **DENIED**.

## BACKGROUND

In the above-captioned case, Plaintiff Net Navigation asserts four patents related to transmitting data through network devices such as network switches and routers. United States Patent No. 6,307,860 ('860) relates to a system that provides an interface between two networks in which data may need to be transformed between the networks.  Abstract.  The system utilizes two processors.  The first processor determines how data is to be transformed and the second processor transforms the data at commands from the first processor.  '147 Patent at 1:65-2:1.  In some embodiments the first process is an intelligent programmable processor that may be slow and the second processor can have less intelligence but may be faster and less expensive.  '147 Patent at 2:6-19, Abstract.

Defendants assert that '860 Patent Claim 1 recites a "first circuit" that is used to "(iv) generate commands specifying how the data units are to be transferred" and also "commands specifying that the second address information is to be supplied for the data units."  Defendants assert that claim 1 subsequently requires a "second circuit" to "execute **the** commands to transfer

---

[2] See footnote 1.

the data units." Defendants assert that the claim is ambiguous as to what are the subsequently recited "the commands to transfer the data units." Dkt. 123 at 1-2.

Net Navigation asserts that commands referenced in the "second circuit" clause are merely the commands referenced in the "(iv) generate commands specifying how the data units are to be transferred." In addition, Net Navigation asserts that the two commands pointed to by the Defendants in the "first circuit" clause are in fact the same commands. Dkt. 137 7-8, 11-12.

## LEGAL STANDARDS

*Summary Judgment*

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the

essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

*Claim Indefiniteness*

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112(b). Whether a claim meets this definiteness requirement is a matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party challenging the definiteness of a claim must show it is invalid by clear and convincing evidence. *Id.* at 1345.

"Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008) (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)). That is, the "standard [for finding indefiniteness] is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton,* 514 F.3d at 1249-50. The ultimate issue is whether someone

working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).

> In determining whether that standard is met, i.e., whether the claims at issue are sufficiently precise to permit a potential competitor to determine whether or not he is infringing, we have not held that a claim is indefinite merely because it poses a difficult issue of claim construction. We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree. Under a broad concept of indefiniteness, all but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue. But we have not adopted that approach to the law of indefiniteness. We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds. . . . By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.

*Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (citations and internal quotation marks omitted).

## ANALYSIS

Defendants contest the validity of claim 1 of the '860 patent for indefiniteness under 35 U.S.C. § 112. Claim 1 recites (the portion asserted to be indefinite being in bold):

1. A network processor system comprising:

a circuit C1 for receiving network data units flowing sequentially between a network port and a network switch, writing the network data units into a first queue, and for generating requests to process the data units, wherein each data unit has first address information specifying the data unit's destination;

a first circuit operable to execute computer instructions to (i) receive said requests, (ii) read portions of the data units corresponding to the requests, (iii) determine based on said portions whether and how the data units are to be transformed, (iv) generate commands specifying how

5

the data units are to be transformed, and (v) write the commands to a memory, wherein the first circuit is programmable with said computer instructions to read at least portions of the first address information from the data units, to determine second address information, and generate commands specifying that the second address information is to be supplied for the data units when the data units are transferred to the network port or the network switch; and

a second circuit for reading the commands from the memory and executing **the commands to transfer the data units to the network port or the network switch,** wherein the memory is operable to contain a plurality of commands which have been written to the memory by the first circuit but have not yet been executed by the second circuit;

wherein the circuit C1 is operable to write a data unit into the first queue in parallel with the first circuit executing said computer instructions and in parallel with the second circuit executing said commands.

21:45-22:9. Defendants assert that if claim 1 is determined to be invalid, then the asserted dependent claims 2, 7, 8, 10, 11, 15 and 17 would also be invalid.

Defendants assert that the commands recited in the "second circuit" clause: "the commands to transfer the data units to the network port" are not provided with antecedent basis in the claim. In particular, Defendants assert there are no earlier references in the claim to "commands to **transfer**." Dkt. 123 at 4-5. Defendants assert that the earlier recited commands in the "first circuit" clause are "commands specifying how the data units are to be **transformed**" and "commands specifying **that the second address information is to be supplied** for the data units." Dkt. 123 at 5. Defendants asset that the "first circuit" clause does not disclose any "commands to transfer." The Defendants assert that the lack of antecedent basis renders the claim invalid. Dkt. 123 at 5-6 (citing numerous cases regarding indefiniteness and antecedent basis).

Defendants assert that the commands in the "first circuit" relate to transforming data and supplying address information and thus do not provide antecedent basis for the "commands to transfer." Dkt. 123 at 7. Defendants assert that the commands to **transform** the data cannot be

used to **transfer** the data because transformation of the data units occurs before data units are transferred to the network switch. Dkt. 123 at 7 (citing 26:10-11, 1:18-21, and dependent claim 36). Defendants assert that the commands for supplying the second address information cannot be the relevant commands because the commands to supply second address information are generated "when the data units are transferred." Dkt. 123 at 8 (quoting 21:62-65). Defendants assert that since these claims are generated "when" data units are transferred, the commands must be a separate event. Dkt. 123 at 8. Defendants further list out a variety of commands found in the specification and assert that none of these commands are "commands to transfer the data units to the network port." Dkt. 123 at 8-10.

Defendants assert that thus one skilled in the art cannot determine what commands, if any, fall within the scope of the claims.

In response, Net Navigation asserts that "the commands to transfer" does in fact have antecedent basis. Net Navigation asserts that the commands in question are the earlier recited "commands specifying how the data units are to be transformed." Dkt. 137 at 5. In particular, Net Navigation asserts that a review of the surrounding claim language makes clear that the commands in the "second circuit" clause are the commands referenced in the "first circuit" clause. Net Navigation points to the claim language with emphasis added to indicate the referenced commands:

> a first circuit operable to execute computer instructions to (i) receive said requests, (ii) read portions of the data units corresponding to the requests, (iii) determine based on said portions whether and how the data units are to be transformed, (iv) **generate commands** specifying how the data units are to be transformed, and (v) write **the commands** to a memory, wherein the first circuit is programmable with said computer instructions to read at least portions of the first address information from the data units, to determine second address information, and generate commands specifying that the second address information is to be supplied for the data units when the data units are transferred to the network port or the network switch; and

7

21:52-65.  Net Navigation asserts that the claim language relating to the "first circuit" makes clear that the commands specifying how the data units are to be transformed are the commands written to memory as those are the only commands recited at that point in the claim.  Dkt. 137 at 7-8.  Net Navigation asserts that the surrounding language of the "second circuit" clause makes clear that the recited commands are the commands read from the memory:

> a second circuit **for reading the commands from the memory and executing the commands to transfer the data units to the network port or the network switch**, wherein the memory is operable to contain a plurality of commands which have been written to the memory by the first circuit but have not yet been executed by the second circuit;

21:66- 22:5.  Net Navigation asserts that the commands in the "second circuit" clause are clearly read from memory and the only commands in memory are the earlier recited "commands specifying how the data units are to be transformed."  Net Navigation asserts that this is further clarified as the "second circuit" clause concludes "wherein the memory is operable to contain a plurality of commands which have been written to the memory by the first circuit but have not yet been executed by the second circuit."

Net Navigation asserts that the specification discloses such commands.  Net Navigation asserts that the Abstract teaches channel processors (the second processor) which "include (1) a command to transmit received data, perhaps skipping some data; and (2) a command to transmit data specified by the command itself rather than the received data."  Net Navigation also points to the specification which states:

> [T]he second processor **transforms data at commands from the first processor** and because very few simple types of commands can satisfy requirements of a wide range of tasks, protocols, and standards.  In particular some embodiments include **commands such as**:
> (1) **transmit a number of bytes of received data**, perhaps skipping some data (the capability to skip data is used to skip an address that has to be replaced, or to skip a checksum, or for other protocol transformations);

> (2) **transmit data specified in the command**, for example, immediate data included in the command or data stored at an address included in the command (this is used to insert a new address or for other transformations). 2:15-28

Net Navigation asserts that Defendants apparently argue a distinction between the words "transmit" and "transfer" to assert that that the specification does not disclose the commands in question. Net Navigation asserts that this is a distinction that is improper to one skilled in the art and also cites to a passage in the '860 Patent which uses transmit and transfers in a similar fashion. Dkt. 137 at 10 (citing extrinsic dictionaries and 1:23-27).

Net Navigation also asserts that Defendants misconstrue the phrase "the commands to transfer." In particular, Net Navigation asserts that the entire phrase ("executing the commands to transfer the data units to the network port") should be construed not as a new set of commands (i.e. transfer commands), but rather "the" commands previously recited being used in order to transfer the data units. Thus, Net Navigation asserts the phrase in question does not recite any new commands, but rather just "the commands" previously recited and those commands are executed to transfer the data units. Dkt. 137 at 11.

Net Navigation asserts that consistent with its position, the second recitation of "commands" in the "first circuit clause" again merely refers to the previously recited commands.[3] In particular, Net Navigation asserts that the "first circuit" clause concludes with a "wherein…" statement:

> wherein the first circuit is programmable with said computer instructions to read at least portions of the first address information from the data units, to determine second address information, and generate commands specifying that the second address information is to be supplied for the data units when the data units are transferred to the network port or the network switch

---

[3] At the oral hearing Defendants did not appear to contest this point. In the briefing Defendants assert that even if both references to commands in the "first circuit" are to the same commands, such commands are not the commands to "transfer." Dkt. 142 at 7.

Net Navigation asserts that the "wherein" clause merely recites further requirements of the previous five elements of the "first circuit" clause as the term "wherein" is typically used in claims to introduce further limitations for previously recited elements. Dkt. 137 at 12.

In reply, Defendants assert that Net Navigation is attempting to improperly rewrite the claims such that "commands to transfer" is read as "commands [in order] to transfer." Dkt. 142 at 8. Defendants further assert that Net Navigation's citation to the specification passages that recite "commands to transmit data" is another attempt to rewrite the claims as the claims state "transfer" not "transmit." Dkt. 142 at 9-10.

"Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008) (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)). That is, the "standard [for finding indefiniteness] is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton,* 514 F.3d at 1249-50.

Net Navigation has provided a reasonable interpretation of the claim such that the claim is amenable to a non-ambiguous construction. In fact, Net Navigation's interpretation reflects the most natural reading of the claims. Though Defendants focus on "commands to transfer," the surrounding claim language makes clear that the commands of the "second circuit" clause are the commands of the "first circuit" clause. The surrounding claim language in the "first circuit" clause describes commands written to memory and then in the "second circuit" clause the claim language recites "reading the commands from the memory and executing the commands to transfer…." From this language it is clear that commands are written to memory in the "first

circuit" clause and then the second circuit is used "for reading the commands from the memory and executing the commands."  In addition, the context of the entire surrounding language of the "second circuit" clause indicates the commands in question are executed "to transfer the data," not that these are a new set of "commands to transfer" as advocated by Defendants.

Thus, the claims themselves provide sufficient grounds to find that the claims are not insolubly ambiguous.  Moreover, the interpretation of the executed commands of the "second circuit" clause being the commands generated in the "first circuit" clause is supported by the specification at 2:15-28.  Albeit, this passage uses "transmits" rather than "transfer." However in the context of the passage and the claim language the wording does not seem to carry a significant difference in meaning that would render the claims insolubly ambiguous.

Net Navigation has provided a reasonable interpretation that conforms with the claims themselves and the specification.  Contrary to Defendant's argument, there is ample basis in the '860 patent specification to inform one of skill in the art as to the scope of the "the commands" limitation.

## CONCLUSION

Based on the foregoing, the Court orders / recommends[4] Defendants' Motion for Summary Judgment of Invalidity Based On Indefiniteness be **DENIED**.

**SIGNED this 11th day of December, 2012.**



AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[4] See footnote 1 herein.